## Cincinnati, New Orleans & Texas Pacific Railroad Company, et al. v. Bell.

(Decided April 28, 1925.)

### Appeal from Pulaski Circuit Court.

1. Railroads—Railroad Lineman Must Refrain from Unnecessarily
Frightening Animals at Crossing.—Where railroad lineman's gaso-
line velocipede was stationary and motor was still when plaintiff
driving a mule approached the crossing, and there was no sound
to disturb such mule, and plaintiff was rightfully on the crossing,
lineman owed plaintiff duty to refrain from unnecessarily frighten-
ing his mule.

2. Evidence—Common Knowledge that Exhaust from Gasoline En-
gine is Similar to Report of Small Firearms.—It is common knowl-
edge that an exhaust from a gasoline engine is very similar to re-
port of small firearms.

3. Railroads—Railroad Liable for Frightening Animal Causing Run-
away, Irrespective of Collision.—Where, as plaintiff approached
crossing, railroad lineman's gasoline velocipede was stationary
and motor still, if lineman started his motor while mule was
nearly in front and within a few feet of it, thereby frightening
mule and causing it to run away, railroad was liable for resulting
injuries, irrespective of whether velocipede actually collided with
plaintiff's buggy.

4. Trial—Instruction that it was Lineman's Duty, Before Starting
Motorcar, to Wait until Plaintiff had Passed Reasonably Over
Crossing, Held Not Misleading.—In action for injuries, instruction

that it was railroad lineman's duty to wait before starting his motorcar until plaintiff had passed with his mule and buggy "reasonably over crossing" held not misleading as submitting question of law.

WILLIAM WADDLE, MAURICE L. GALVIN and EDWARD COLSTON for appellants.

JOHN W. COLYER and W. M. CATRON for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

G. E. Bell and wife and infant child, were riding in an open-top buggy over the tracks of the C., N. O. & T. P. R. R. Co., at Columbia crossing in the city of Somerset. While so doing the mule drawing the vehicle became frightened by the movement of a motor velocipede on the railway tracks and ran away, throwing the occupants from the buggy. Bell received serious injuries, for which he recovered in this action the sum of $3,450.00 against the C., N. O. & T. P. Ry. Co. and Dallas Bradshaw, the operator of the velocipede. Both defendants appeal.

At this intersection there is a double line of track running north and south, and to the west of the tracks is a steep descent. Bradshaw was employed by the railroad company as a telephone lineman, and in going from place to place used a two-horse power, four-wheel motor railway velocipede.

On the afternoon in question he stopped the velocipede on the west track a few feet north of the road crossing. After making some repairs to the line he returned to his machine with the intention of going southward.

Some travelers were approaching from the east and Bradshaw leaned against his machine while they were passing. The first was a wagon loaded with several men, and following them at a distance of about thirty yards were the plaintiff and his wife and child. So far there is no contradiction in the evidence.

Plaintiff's additional evidence is that his mule was gentle; that he was driving along at a walk, trailing the wagon and team; that he saw Bradshaw standing beside his velocipede looking at him; that as his mule reached the tracks immediately in front of the velocipede, Bradshaw started the latter forward; that this movement was accompanied by a loud and rapid succession of noises which frightened the mule, causing it to jump and run forward; that he did not see the velocipede strike his

buggy, but felt an impact from the rear as it passed on; the mule ran rapidly down the road, throwing out the occupants of the buggy, fracturing his arm and otherwise injuring him.

In this he is corroborated by the occupants of the wagon and several other witnesses, some of whom claim to have seen the velocipede strike the wheel of the buggy, although that vehicle does not seem to have been injured.

Plaintiff was picked up; he visited a physician, had his wounds treated and returned home that night.

Appellant Bradshaw states that he saw the wagon and buggy as they approached; that he stood by his velocipede and waited for the latter to pass; that he did not start his machine until the buggy had passed forty or fifty feet from the tracks and then merely pushed it by hand; that there was no ignition and no popping or other sound except such as was made by the wheels; that he observed that the mule was frightened and stopped his velocipede within a few feet of the south crossing and went to the assistance of plaintiff. He is also corroborated by several witnesses.

Appellant admits its liability if the velocipede collided with the buggy, but insists that this issue alone should have been submitted to the jury and that the court erred in authorizing a recovery for plaintiff for injuries resulting from the fright of the animal if unaccompanied by a collision.

It is argued that, inasmuch as railroad companies are authorized by law to operate their trains, hand cars, velocipedes and other instrumentalities upon their tracks and in doing so to make usual, necessary and customary noises even at public crossings, no liability attaches in the exercise of such right except in cases of negligent collision or in cases where the operator of the instrumentality perceives the fright of an animal and thereafter negligently doing something that accentuates such fright and causes injury. Hudson v. L. & N. R. R. Co., 14 Bush 303; Ohio Valley R. R. Co. v. Young, 19 Ky. L. R. 158; L. & N. R. R. Co. v. Smith, 107 Ky. 178; L. & N. R. R. Co. v. Howerton, 115 Ky. 89.

But the facts in this case do not fall within the rule laid down in those cases. It is admitted that Bradshaw saw the plaintiff as he approached and drove over the crossing. At that time his velocipede was stationary, the motor was still and there was no sound to disturb the passing animal and plaintiff was rightfully upon the

crossing, and Bradshaw owed him the duty to refrain from unnecessarily frightening the passing animal. It is commonly known that an exhaust from a gasoline engine is very similar to the report of small firearms. Unquestionably if under the circumstances Bradshaw had discharged blank cartridges at the passing mule, he should have anticipated frightening him; and to have started the motor with its accompaning noises while the mule was directly or nearly in front and within a few feet of it, as claimed by plaintiff, was equally alarming. If Bradshaw did this and thereby frightened the animal and caused it to run away, appellants will not be heard to say that their liability is restricted to injuries resulting from the actual collision. Indeed, such seems to have been appellants' theory of the case, as they claim the buggy had proceeded some forty or fifty feet beyond the tracks before the velocipede was started, and that even then it was running without ignition, and the case went to the jury upon these issues of fact.

The instruction given by the court, while too long to be quoted in this opinion, fully submitted these issues.

A criticism of the first instruction is that it submitted the questions of both law and fact to the jury, the language being, "It was the duty of the defendant, Bradshaw, to wait before starting said motor car until the plaintiff had passed with his mule and buggy reasonably over said crossing."

We do not think the criticism merited. Under the facts detailed the motor should not have been started while plaintiff was on the tracks, and the expression "reasonably over the crossing" could not have been misunderstood by the jury but left them to determine whether it was prematurely started.

Wherefore, perceiving no error, the judgment is affirmed.